J-A02007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SAMANTHA LEE BLANKENSHIP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TODD RAYMOND BLANKENSHIP | : | No. 1049 MDA 2023 |

Appeal from the Order Entered July 24, 2023
In the Court of Common Pleas of Adams County Civil Division at No(s):
2009-SU-0734

BEFORE:  NICHOLS, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:          **FILED: MAY 22, 2024**

Appellant Samantha Lee Blankenship (Wife) appeals from the order dismissing her petition for contempt against Appellee Todd Raymond Blankenship (Husband) for breaching the parties' marital settlement agreement.  Wife argues that the trial court erred in concluding that Husband was no longer required to make alimony payments because Wife is cohabitating with a male adult to whom she is not related.  We affirm.

The underlying facts of this matter are well known to the parties.  **See** Trial Ct. Op., 3/17/23, at 1-5.  Briefly, the parties entered into a marital settlement agreement (MSA) following their divorce in 2012.  Therein, Husband agreed to pay alimony to Wife which would terminate upon "[Wife's] cohabitation with any non-lineal related male adult."  **See** Marital Settlement Agreement at ¶12.2(iii).  After Husband stopped making alimony payments in November of 2022, Wife filed a petition for contempt.

At the contempt hearing, the parties stipulated that Gregory Davis had been staying overnight in Wife's residence. *See* N.T. Hr'g, 1/18/23, at 4. Therefore, the only issue for the trial court to resolve was whether Wife and Davis were "cohabitating," which would bar Wife from continuing to receive alimony from Husband. *Id.* at 5. During the hearing, Wife testified that she suffered from serious health issues which required her to spend long periods of time in the hospital during 2020 and 2021. *Id.* at 15-16. Wife explained that in 2021, Davis began staying in her residence during the night. *Id.* Although Wife acknowledged that she and Davis were in a romantic relationship previously, she explained that Davis is now her "best friend" who provides necessary caretaking so that Wife can continue to live in her own home. *Id.* at 19.

The parties also stipulated to exhibits which contained screenshots of Wife's Facebook page. *Id.* at 24-25. On cross-examination, Wife confirmed that she had made a Facebook post about her six-year anniversary with Davis in July of 2022, made other posts stating that she was "in love" with Davis, and was also listed as being "in a relationship" with Davis on her Facebook profile. *Id.* at 24-26. On re-direct, Wife explained that neither she nor Davis intended to get married. *Id.* at 27. She also confirmed that Davis was, in fact, her "boyfriend" but also stated that he was more so a "best friend and [] caregiver." *Id.* at 27-28. At the conclusion of the hearing, the trial court took the matter under advisement and instructed the parties to submit memoranda of law supporting their respective positions. *Id.* at 32.

Ultimately, the trial court concluded that "[a]lthough there has been no formal request to terminate the alimony payments[, Husband] cannot be found in willful contempt for violating the MSA when [Wife's] cohabitation with [Davis] is a bar to alimony per the terms of the MSA." Trial Ct. Op., 3/17/23, at 10. Therefore, the trial court issued an order and opinion dismissing Wife's petition for contempt.

The trial court subsequently granted Wife's motion for reconsideration. The parties did not request to supplement the record with additional testimony or evidence. Following oral argument on May 17, 2023, the trial court issued an order reaffirming its original order dismissing Wife's petition. **See** Trial Ct. Order, 7/24/23.

On July 28, 2023, Wife filed a timely notice of appeal.[1] Both Wife and the trial court complied with Pa.R.A.P. 1925.

On appeal, Wife raises the following issue:

Whether the [trial c]ourt abused its discretion or made an error of law when it determined that the following facts barred [Wife's] right to continued alimony pursuant to a marital settlement agreement.

_____

[1] As noted, the trial court issued an order denying Wife's petition on March 17, 2023. The trial court expressly granted Wife's motion for reconsideration on March 28, 2023. **See** Trial Ct. Order, 3/28/23, at 1. Because the trial court expressly granted reconsideration within the time allotted for filing an appeal, the time for taking the appeal was tolled until the trial court issued its July 24, 2023 order. **See Cheathem v. Temple Univ. Hosp.**, 743 A.2d 518, 520 (Pa. Super. 1999) (observing that "the 30-day [appeal] period may only be tolled if that court enters an order 'expressly granting' reconsideration within 30 days of the final order" (citations omitted)). Therefore, Wife's notice of appeal was timely.

Wife's Brief at 4.

Wife argues that the trial court erred in concluding that she was cohabitating with Davis and failing to recognize that "the previously existing sexual relationship" between the parties had "ceased to exist." *Id.* at 21. Wife claims that although Davis began staying overnight in Wife's home in August of 2021, "it was for caregiving purposes only" as her "health had deteriorated to the point that she required someone to be with her at all times for safety." *Id.* at 21-22. Wife contends that "[i]t was at that same time, and not before, that the relationship changed from one of sex and romance to that of friendship, complete dependence by Wife, and caretaking by Davis and others including nurses and friends." *Id.* at 22. Therefore, Wife concludes that there is no spousal relationship, as "[t]here is no 'mutual interdependence' between the parties. . . . [and i]t is Wife who solely benefits from Davis'[s] friendship and caregiving." *Id.* at 26 (emphasis omitted).

Husband responds that there is ample evidence establishing that Wife resides with Davis, a member of the opposite sex, with whom she also shares both a financial and social interdependence. Husband's Brief at 10-13. Husband also asserts that "sexual interdependence is but one of multiple avenues available to establish two people are mutually assuming those rights and duties usually attendant upon the marital relationship." *Id.* at 13. Further, Husband contends that "Wife and Davis have been living under their arrangement for over 2 years, with no indication that this would discontinue[]" and "the social media posts of both Davis and Wife indicate the parties were

- 4 -

and continue to remain affectionate towards each other and share a meaningful relationship." *Id.* at 15. Therefore, Husband concludes that "[t]aken together, the actions of Wife and Davis are exactly those of two people who are acting in the manner of [h]usband and [w]ife, and as such, they must be found to be cohabitating as established by caselaw." *Id.* at 16.

Our standard of review is as follows:

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*Rosiecki v. Rosiecki*, 231 A.3d 928, 933 (Pa. Super. 2020) (citation omitted).

This Court has explained:

Under Pennsylvania law, cohabitation is a term of art that has been defined by this Court as existing when two people reside together "in the manner of" spouses, "mutually assuming those rights and duties usually attendant upon the marriage relationship." *Miller v. Miller*, 508 A.2d 550, 554 (Pa. Super. 1986).

Cohabitation may be shown by evidence of financial, social, and sexual interdependence, by a sharing of the same residence, and by other means. Where, upon proof by a preponderance of the evidence, the trier of fact concludes

- 5 -

that the dependent former spouse has entered into a relationship with "a [person] who is not a member of the [alimony recipient's] immediate family within the degrees of consanguinity" and the two have assumed the rights, duties, and obligations attendant to the marital relationship, the dependent former spouse is no longer entitled to receive alimony from the other former spouse. An occasional sexual liaison, however, does not constitute cohabitation.

*Id.* (citation omitted).

***Chaclas v. Chaclas***, 1296 EDA 2022, 2023 WL 6228927 at *3 (Pa. Super. filed Sept 26, 2023) (unpublished mem.).[2]

Here, the trial court explained:

While Wife and [Davis] have not commingled bank or brokerage accounts and do not own property together, there is evidence of financial interdependence. [Davis] has stayed at Wife's residence every night since 2021 (except for instances where Wife was hospitalized or recuperated temporarily at [Davis's m]other's home). [Davis] is a vehicle mechanic with a full-time job at a local car dealership, working dayshift hours. He is not employed as a caregiver. In addition to staying with Wife most evenings and overnights, [Davis] regularly assists Wife with personal tasks such as bathing, helping take care of her pet, transportation to and from various appointments, household chores, and making meals for both of them. [Davis] performs these tasks and Wife benefits from them without any monetary remuneration. Although [Davis] stays at Wife's residence every night she is there, he does not pay rent or contribute to the mortgage. [Davis] keeps his toothbrush and work clothing at Wife's residence. [Davis] consumes utilities at Wife's residence without any financial contribution. [Davis] uses Wife's vehicle to drive to and from his employment. He pays for the gas for the vehicle. He pays for some of Wife's meals.

With respect to evidence of social interdependence, Wife acknowledged in testimony that [Davis] is more than just her caretaker. They dine together at home and out on the town. They celebrate the anniversary of their relationship and other special

_____

[2] We may refer to this Court's unpublished memoranda filed after May 1, 2019 for its persuasive value. *See* Pa.R.A.P. 126(b).

occasions together. Wife announces those special occasions to her followers on social media. As detailed in the prior opinion, Wife's social media posts demonstrate that they are engaged in a committed, monogamous romantic relationship, beyond that of a caregiver/patient or casual friendship. [Davis] also acknowledges on his social media account that he is in a relationship with Wife. When he is not working, [Davis] is Wife's constant companion and accompanies her on social outings. They vacationed together prior to Wife's recent illness. When Wife was hospitalized various times over the past several years, [Davis] brought her personal items when she needed them.

With respect to sexual interdependence, the record demonstrates that Wife and [Davis] engaged in intimate sexual relations over several years between 2016 and November 2022, including the time frame [Davis] began staying overnight every night at Wife's residence in 2021 (except for instances where Wife was hospitalized or recuperated temporarily at [Davis's m]other's home). They ceased sexual relations in 2022 due to Wife's various illnesses, but they continue to display romantic affection for each other and hold themselves out to their friends on social media as being in aromantic, committed relationship beyond that of a caregiver/patient or casual friendship.

Wife and [Davis] have engaged in a consistent pattern of conduct established over several years that demonstrates a committed, long-term, monogamous relationship similar to that of spouses. The totality of the circumstances demonstrates a consistent pattern of conduct that evidences commitment and permanency to the relationship, regardless of intent to formally wed. Wife's testimony demonstrated by a preponderance of the evidence that the qualities of stability, permanence and mutual interdependence are present in her relationship with [Davis]. The testimony here is consistent with people acting "in the manner of" spouses. It was therefore reasonable for Husband to believe that Wife was cohabiting with [Davis] and therefore excused from making his alimony payment in November of 2022 as permitted by the provisions of the Marriage Settlement Agreement. Otherwise, the relationship between [Davis] and Wife is being supported and/or financed to some degree by the remnants of the former marriage.

Trial Ct. Suppl. Op., 7/24/23, at 2-4 (citation omitted).

Following our review of the record, we discern no abuse of discretion or error of law by the trial court. **See Rosiecki**, 231 A.3d at 933. The record supports the trial court's conclusion that Wife and Davis have having been living together "in the manner of" spouses since 2021. **See Miller**, 508 A.2d at 554. Therefore, the trial court correctly concluded that Wife is no longer entitled to alimony under the terms of the parties' marriage settlement agreement. For these reasons, we discern no error in the trial court dismissing Wife's petition for contempt, and we conclude that Wife is not entitled to relief. Accordingly, we affirm.

Order affirmed. Jurisdiction relinquished.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/22/2024